UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| DOUGLAS L. MILLER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. |
| ) | |
| NORTH AMERICAN LIGHTING, INC. ) | |
| and PARIS COMMUNITY HOSPITAL/ ) | |
| FAMILY MEDICAL CENTER ) | |
| ) | |
| Defendants. ) | |

*COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
AND DEMAND FOR JURY TRIAL*

Plaintiff, Douglas L. Miller (hereinafter "Miller"), by his counsel, for his cause of action against the defendants, North American Lighting, Inc. (hereinafter "NAL") and Paris Community Hospital/Family Medical Center, states as follows:

*I.  FACTUAL ALLEGATIONS*

1.      Miller is a resident of West Terre Haute, Vigo County, Indiana.

2.      Miller worked for NAL at its Paris, Illinois facility from approximately March 3, 2003 through March 27, 2006.

3.      During his tenure as a NAL employee, Miller capably performed his job duties and certainly met NAL's legitimate job expectations.

4.      Miller suffers from serious breathing disabilities, 1) Chronic Obstructive Pulmonary Disorder ("COPD") and 2) asthma.  During the Fall 2005, Miller applied for intermittent medical leave under the Family and Medical Leave Act in order to protect his employment while he struggled with his breathing disability.  On a number of days through late

2005 and early 2006 (on an intermittent basis), Miller had so much difficulty breathing that he could not work at all or function or care for himself and he had to use his FMLA benefit. Because of his COPD and asthma condition, Miller is substantially limited in the major life activity of breathing. On two occasions, Miller formally applied to NAL for intermittent medical leave under the Family and Medical Leave Act ("FMLA"). Miller completed all paperwork and provided all information, including medical information, that NAL required to verify his need for this intermittent leave.

5. NAL violated Miller's substantive FMLA rights and retaliated and discriminated against him for his use and attempted use of his FMLA rights. After Miller applied and arranged for FMLA intermittent leave for his breathing disability, NAL supervisors and management began to harass and retaliate against Miller. For example, after his second FMLA application, NAL began to schedule Miller for repeat "random" drug screens.

6. Miller also is disabled by a chronic back and neck condition. The condition and pain from the condition substantially limit Miller in the major life activities of lifting and working. His condition is and was known by NAL management. Miller is required to regularly take prescription pain medications. In 2006, Miller was taking multiple pain medications, including one called Avinza (spelling not certain) and Norco. On the last occasion Miller was "randomly" called for a drug screen, he disclosed his medications. He received a follow up telephone call from Defendant Paris Community Hospital/Family Medical Center about his drug screen, disclosed his medications again, and was told by the representative from Paris Community Hospital's laboratory that his test was fine.

7. Shortly afterward, Miller was terminated by NAL in a meeting with supervisor Doug Starkey and Human Resources Manager Mark Pitchford. NAL claims it fired Miller for

"violation of policy" and in the meeting, Mr. Pitchford claimed to Miller that his "levels were high." About the drug screen, Miller again explained that he would test high for morphine and opiates because of his prescription medications, and Miller asked to see this drug screen result so that he could clear himself and preserve his employment. NAL refused to listen and refused to give Miller a copy of the report of this allegedly failed drug screen.

8. Particularly because of the multiple "random" drug screens after he started using the FMLA to preserve his employment, coupled with the fact that NAL was already aware of Miller's pain medications, and the fact that NAL became hostile toward Miller for using his FMLA rights to help deal with his breathing ability, Miller knows that NAL created this false and pretextual explanation for his firing in order to avoid accommodating his breathing disability and avoid honoring his FMLA rights.

9. In addition to the fact that Miller does have qualifying disabilities under the ADA, because of his disclosure of medical records and information he provided to NAL, Miller also is specifically alleging that NAL regarded him as disabled in the major life activities of breathing, lifting and working, and NAL discriminated against him because of his medical records of those same disabilities.

10. Despite his disabilities, Miller was capable of performing all essential functions of his material handler position at NAL.

11. Because of his disabilities and his application to enforce his FMLA rights, NAL has discriminated against Miller. NAL has treated Miller differently and less favorably in its selection for drug screening and administration of its drug testing policy. It treated Miller less favorably in application of discipline policies, including its termination policies.

12. At the time of his wrongful termination, Miller had certainly not exhausted all of

his available FMLA leave.

13. NAL had no legitimate, non-discriminatory/retaliatory reasons for terminating Miller's employment. All of NAL's motivation and reasons for terminating Miller's employment are unlawful, illegal and contravene federal law.

14. With respect to relief, Miller seeks to be made whole and is seeking any and all available relief. He seeks all lost wages and benefits, including back pay and front pay, reinstatement, all available liquidated damages, all compensatory damages, all punitive damages, payment of his reasonable attorney's fees, costs and expenses, prejudgment interest, and any and all available equitable relief.

## II. JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 29 U.S.C. § 2611 et seq., 42 U.S.C §12101 et seq., and supplemental jurisdiction over Miller's Illinois law claim, as it arises under the same set of common facts.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because of the unlawful conduct alleged below was and is now being committed in the Central District of Illinois.

## III. PARTIES

17. Miller was domiciled in and was a resident of West Terre Haute, Vigo County, Indiana at the time of the events which give rise to this cause of action.

18. NAL operates its facility from which it employed Miller in Paris, Edgar County, Illinois.

19. Paris Community Hospital/Family Medical Center is a private, not for profit

hospital which operates the laboratory from which it tested Miller in Paris, Edgar County, Illinois.

## IV.  ADMINISTRATIVE PROCEDURES

20. Miller has complied with all of the administrative procedures that are conditions precedent to the filing of this lawsuit. Miller received his Notice of Right to Sue from the Equal Employment Opportunity Commission on September 26, 2007.

## V.  STATEMENT OF CLAIMS

### A.  CLAIMS UNDER THE FAMILY AND MEDICAL LEAVE ACT AGAINST NAL

21. Miller alleges and incorporates herein paragraphs 1 - 14 above.

22. Miller was wrongfully terminated from his employment with NAL due to his attempts to exercise his rights to medical leave under the FMLA. Miller's attempts to exercise his FMLA intermittent medical leave rights were factors which improperly motivated NAL to terminate Miller's employment. Said wrongful termination of Miller's employment is prohibited by 29 U.S.C. § 2615.

23. By way of this Complaint, Miller is specifically alleging that NAL terminated him in order to interfere with his right to take FMLA leave.

24. Additionally, by way of this Complaint, Miller is specifically alleging that NAL terminated him in order to discriminate against and retaliate against him for having taken leave under the FMLA, and continuing to use his FMLA intermittent medical leave rights.

25. Miller is an eligible "employee" as that term is defined under the FMLA.

26. NAL is a covered "employer" as that term is defined under the FMLA.

27. Miller's COPD and severe asthma condition are both serious health conditions covered by the FMLA. At all times relevant, Miller appropriately advised NAL of his serious

health condition and his need for intermittent leave as it arose.

28.     NAL unlawfully interfered with, restrained and denied Miller's exercise of his protected rights under the FMLA.

29.     As a direct and proximate result of NAL's conduct, Miller has sustained substantial economic losses, including past and future loss of wages, and other economic benefits.  By way of this Complaint, for NAL's violations of the FMLA, Miller is seeking all available damages, including, but not limited to, liquidated damages, back pay and benefits, reinstatement, front pay and benefits, all of his attorney's fees, costs and expenses, and any other damages necessary to remedy NAL's violations of Miller's rights under the FMLA.

**B.  CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT AGAINST NAL**

30.     Miller alleges and incorporates herein paragraphs 1 - 14 above.

31.     Miller is a qualified individual with a disability who is capable of performing all essential functions of his material handler position which he held with NAL, with or without reasonable accommodation.  Miller's COPD, severe asthma, and chronic back and neck condition substantially impair and significantly restrict Miller, when compared to the average person in the general population, in a number of major life activities, including, but not limited to, breathing, working, lifting and caring for himself.  With respect to the major life activity of working, when compared to the average person in the general population, because of limitations from his disability, Miller is significantly restricted in and excluded from multiple classes of jobs.  Additionally, there exist a broad range of jobs from which Miller is also either significantly restricted or excluded.

32.     Additionally, NAL terminated Miller and discriminated against Miller based upon NAL's regard of Miller as being substantially limited in a number of major life activities,

including, but not limited to, breathing, working, lifting and caring for himself.  Finally, NAL terminated Miller based upon his medical records and history of disabilities which substantially limited him in a number of major life activities, including, but not limited to, breathing, working, lifting and caring for himself.

33. NAL terminated Miller rather than engage with him in the interactive communication process required under the ADA.

34. NAL discriminated against and retaliated against Miller and terminated him for having engaged in protected activity, to wit, making known his disabilities, making known his prescription medications, and seeking intermittent medical leave because of his disabilities.

35. Prior to his termination from employment, Miller performed his job duties well and met his employer's reasonable expectations.  Since NAL terminated his employment, Miller has been unable to secure employment that pays as well as his position with NAL.

36. Miller's disabilities improperly motivated NAL's decision to discharge him from employment.  Such wrongful actions on the part of NAL violate Title I of the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

37. NAL failed and refused to make reasonable accommodations to Miller's known and/or perceived physical limitations, in violation of Title I of the Americans With Disabilities Act, 42 U.S.C. § 12112(b)(5)(A).  The effect of NAL's conduct has been to deprive Miller of equal employment opportunities and to deprive him of the same rights as are enjoyed by other citizens.

38. As a direct and proximate result of NAL's conduct, Miller has sustained substantial economic losses, including past and future wage losses, and other economic benefits.

Miller has also sustained the loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, career damage, mental and emotional distress, discomfort, and loss of enjoyment of life, all to his detriment and damage in amounts not fully ascertained. Further, as described hereinabove, NAL acted oppressively, maliciously, fraudulently and outrageously toward Miller, with conscious disregard for Miller's known rights and with the intention of causing unjust and cruel hardship to Miller. In acting in a deliberate and intentional manner, NAL intended to and did injure and annoy Miller. Miller is seeking punitive damages against NAL for its violations of the ADA.

39. Miller is seeking all of his reasonable attorney's fees, costs and expenses from NAL to redress NAL's violations of his rights under the ADA.

### C. CLAIM FOR NEGLIGENT PERFORMANCE OF A DRUG TEST AGAINST PARIS COMMUNITY HOSPITAL/FAMILY MEDICAL CENTER

40. Miller alleges and incorporates herein paragraphs 1 - 14 above.

41. Defendant Paris Community Hospital/Family Medical Center owed a duty of reasonable care to Miller to perform its analysis of his sample accurately and in a scientifically reasonable manner, so as not to cause Miller foreseeable harm in his employment relationship with NAL or his reputation in his community.

42. Defendant Paris Community Hospital/Family Medical Center breached its duty of care owed to Miller when it negligently and/or recklessly performed a drug test on a sample provided by Miller which resulted in a false positive and/or false conclusion that Miller had unlawfully used drugs. Defendant Paris Community Hospital/Family Medical Center knew and/or reasonably should have known that NAL would terminate Miller based upon a report that Miller tested positive for drugs being used unlawfully. Defendant Paris Community

Hospital/Family Medical Center was specifically advised by Miller of his prescription medication which may have initially resulted in questions about his drug screen, and the representative(s) of Defendant Paris Community Hospital/Family Medical Center who spoke with Miller about his drug screen, after being advised of Miller's prescriptions, actually assured Miller that he was "fine" and that his drug test results were fine.

43. NAL has claimed that, but for Defendant Paris Community Hospital/Family Medical Center's report on Miller's drug screen, it would not have terminated Miller's employment.

44. Defendant Paris Community Hospital/Family Medical Center was negligent in at least the following ways: 1) the manner in which it analyzed Miller's sample and performed the drug screen, 2) in its preparation of its report, 3) in its follow up with Miller after the drug screen, 4) in its communication about Miller with NAL, and 5) in its failure to permit for follow up screening or consultation with Miller and Miller's physicians.

45. As a direct and proximate result of Defendant Paris Community Hospital/Family Medical Center's conduct, Miller has sustained substantial economic losses, including past and future wage losses, and other economic benefits. Miller has also sustained the loss of financial stability, peace of mind and future security and has suffered embarrassment, humiliation, career damage, mental and emotional distress, discomfort, and loss of enjoyment of life, all to his detriment and damage in amounts not fully ascertained. Further, as described hereinabove, Defendant Paris Community Hospital/Family Medical Center acted oppressively, maliciously, fraudulently and outrageously toward Miller, with conscious disregard for Miller's known rights and with the intention of causing unjust and cruel hardship to Miller. In acting in a deliberate and intentional manner, Defendant Paris Community Hospital/Family Medical Center intended to

and did injure and annoy Miller. Miller is seeking punitive damages against Defendant Paris Community Hospital/Family Medical Center for its violations of his known rights and for intentional and/or reckless manner in which it disregarded his known rights.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff, Douglas L. Miller, respectfully requests that the Court enter judgment in his favor and against NAL and Paris Community Hospital/Family Medical Center, and award Miller all available damages and equitable relief, including, but not limited to, compensatory damages, liquidated damages, back pay and benefits, reinstatement, front pay and benefits, punitive damages, attorney's fees, costs and expenses, together with any available pre-judgment interest, and any other relief which would make Miller whole.

By s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
Lead Counsel for Plaintiff
HUNT, HASSLER & LORENZ LLP
100 Cherry Street
P.O. Box 1527
Terre Haute, Indiana 47808-1527
(812)232-9691

### REQUEST FOR TRIAL BY JURY

Comes now the plaintiff, Douglas L. Miller, by his counsel, and hereby requests a trial by jury, on all issues which may be tried to a jury.

By s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
Lead Counsel for Plaintiff

HUNT, HASSLER & LORENZ LLP
100 Cherry Street
P.O. Box 1527
Terre Haute, Indiana 47808-1527
 (812)232-9691

# CIVIL COVER SHEET

JS 44 (Rev. 11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Douglas L. Miller

**DEFENDANTS**
North American Lighting, Inc./ and Paris Community Hospital/Family Medical Center

(b) County of Residence of First Listed Plaintiff: Vigo
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)

## IV. NATURE OF SUIT (Place an "X" in One Box Only)
[X] 442 Employment

## V. ORIGIN (Place an "X" in One Box Only)
[X] 1 Original Proceeding

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 USC §2601 et seq, 42 USC §12101 et seq
Brief description of cause: FMLA retaliation and interference, disability discrimination, negligence.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 10/23/07
SIGNATURE OF ATTORNEY OF RECORD: s/Robert P. Kondras, Jr.

**FOR OFFICE USE ONLY**

RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE