**E-FILED**
Thursday, 19 March, 2009  02:01:28 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | |
|---|---|
| **DOUGLAS L. MILLER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Case No. 07-CV-2195** |
| ) | |
| **NORTH AMERICAN LIGHTING, INC.,** ) | |
| **and PARIS COMMUNITY HOSPITAL/** ) | |
| **FAMILY MEDICAL CENTER,** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#23) filed by

Defendant, North American Lighting, Inc. (NAL) and the Motion for Summary Judgment (#24) filed

by Defendant, Paris Community Hospital/Family Medical Center (PCH).  This court has carefully

reviewed the parties' arguments and the documents presented by the parties.  Following this careful

and thorough review, NAL's Motion for Summary Judgment (#23) is GRANTED.  Because this

results in judgment in favor of NAL on Plaintiff's federal claims, this court declines to exercise

supplemental jurisdiction over Plaintiff's state law claim against PCH.  That claim is therefore

dismissed without prejudice.

## FACTS[1]

Plaintiff, Douglas L. Miller, was hired by NAL on March 3, 2003, as an operator in

assembly.  He later transferred to the shipping department.  At the time he was hired, Plaintiff was

required to undergo a physical examination and complete a medical questionnaire, which he filled

---

[1]  This statement of the facts is based upon the parties' Statements of Undisputed Facts
and the documents submitted by the parties.  This court has only included facts which are
adequately supported by the record.

out completely and truthfully.  At the time Plaintiff was hired, NAL was aware that Plaintiff suffered

from "slight asthma," some back pain, and anxiety, and was aware of all the medications Plaintiff

took for these conditions, including Xanax for chronic anxiety.  From the outset of his employment

with NAL, Plaintiff was aware of NAL's drug testing policy, including the fact that he would be

tested for illegal drugs such as marijuana, and a positive test would result in discharge.

In September 2004, Plaintiff requested leave under the Family and Medical Leave Act

(FMLA) after he was hospitalized several days for acute bronchial asthma and acute bronchitis.  At

that time, Plaintiff had used up all sick leave and other forms of leave available to him.  Plaintiff

testified at his deposition that he experienced no difficulty in obtaining approval for the FMLA

leave.  On November 22, 2004, Plaintiff was selected for a random drug test.  Plaintiff testified at

his deposition that he knew that one of the drugs being tested for was marijuana.  He also testified

that he had no complaints about the way the drug test was administered or the fact that he was

selected for the test.  The results of this drug test were negative.

Plaintiff testified that he was next selected for a random drug test in August 2005, but there

is no record of the results of any drug test in August 2005.  On August 1, 2005, Plaintiff picked up

forms for an FMLA leave.  Plaintiff missed work during the period of September 7-12, 2005, and

October 13-15, 2005, because of bronchial asthma, pharyngitis and sinusitis.  He did not turn in his

request for FMLA leave until October 27, 2005.  Plaintiff's absences in September and October

2005 were retroactively approved as FMLA leave on October 31, 2005.  Plaintiff was also approved

at that time for intermittent leave in the future for his asthmatic and related conditions.  Plaintiff was

subsequently granted FMLA leave on 16 days between November 8, 2005 and March 16, 2006.

Plaintiff testified that he called in and spoke to Shelly Murphy and said that he had breathing

problems.   Murphy then completed the paperwork and he was granted FMLA leave for those absences.

On March 20, 2006, Plaintiff was selected for a drug test and submitted a urine sample. Plaintiff testified that he was not claiming that he was not randomly selected for a drug test on that date.  Plaintiff also testified that he has no facts to support a claim that his selection for any drug test required by NAL was not random.  Mark Pitchford, NAL's human resources manager, testified that Plaintiff was selected by a routine, random process.  Pitchford testified that the monthly lists of employees randomly selected for drug testing was generated at the corporate level for each plant.

Plaintiff testified that, when he was in line for the drug test, his supervisor, Doug Starkey, came and moved him to the front of the line because Starkey needed him back at work right away. Plaintiff testified that he could not explain how that interfered with the drug testing process. Plaintiff testified that he provided a list of all of the medications he was taking at that time including Avenza, which was morphine, and Norco.  Plaintiff testified that he expected to test positive for opiates because of the pain medication he was taking.

Susan Livvix of PCH collected the urine specimens for drug testing on March 20, 2006. PCH had an agreement with NAL to conduct drug testing of employees for NAL.  Plaintiff testified that the procedure on March 20, 2006 was not any different from the procedure for the drug test on November 22, 2004.  Plaintiff testified that he would not say that the collection procedure that he underwent on March 20, 2006, was flawed.  He stated, however, that he did not see the woman overseeing the drug test seal the urine specimen.  He acknowledged that he signed a certification that day which stated, "I certify that I provided my urine specimen to the collector; that I have not

adulterated it in any manner; each specimen bottle used was sealed with a tamper-evident seal in my

presence; and that the information provided on this form and on the label affixed to each specimen

bottle is correct." Plaintiff testified that he did not read the certification before he signed it.

The urine sample provided by Plaintiff was tested at PCH and showed a positive result for

THC and for opiates. The positive result was confirmed by the GC/MS method by LabCorp.

Plaintiff testified that Mr. Gilbert from PCH, who identified himself as the medical director, called

him regarding the results of the drug test. Plaintiff testified that Gilbert asked him about his

medications and Plaintiff told him the dosage he was taking, the name of the doctor who prescribed

the medications, the pharmacy where he got the prescriptions filled and their phone numbers.

Plaintiff testified that Gilbert asked him why he might test positive for THC and Plaintiff told

Gilbert he "had no idea." Plaintiff testified that he knew that THC was associated with the usage

of marijuana. Plaintiff testified at his deposition that he last used marijuana about 26 years ago,

when he was 18 or 19 years old.

Dr. Daniel Gilbert testified that he was the medical review officer for PCH. He testified that

he contacted Plaintiff regarding the results of Plaintiff's drug test. Dr. Gilbert then contacted

Plaintiff's pharmacy and verified that Plaintiff had a current prescription for each medication. Dr.

Gilbert, on behalf of PCH, communicated Plaintiff's positive test result for THC to NAL. Dr.

Gilbert did not report a positive test result for opiates because he had confirmed Plaintiff's

prescriptions for pain medication.

On March 27, 2006, NAL terminated Plaintiff's employment after it received the report of

the positive test for THC. Pitchford testified that any time the hospital certifies the presence of

illegal drugs in an employee's system, the employee's employment is terminated. NAL submitted

documentation showing that every employee who tested positive for drugs was terminated. Plaintiff

testified that the positive test for THC was wrong because he never used marijuana. He testified,

however, that he was not making any claim that NAL knew the test result was wrong or that NAL

was not entitled to rely on the report of the positive drug test. Plaintiff testified that he requested

a copy of the positive drug screen results from PCH and a copy was provided to him.

Om October 25, 2007, Plaintiff filed his Complaint (#1) against NAL and PCH. Plaintiff

alleged that NAL violated the FMLA and the Americans with Disabilities Act (ADA). Plaintiff also

alleged that PCH negligently performed the drug test and sought damages pursuant to Illinois law.

Both NAL and PCH filed a Motion for Summary Judgment. Both Motions are fully briefed and

ready for ruling.

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v.

Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court

has one task and one task only: to decide, based upon the evidence of record, whether there is any

material dispute of fact that requires a trial. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th

Cir. 1994). In making this determination, the court must construe the evidence in the light most

favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Pekin Cmty. High Sch. Dist.

303, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002). Speculation, however, is not the source of a

reasonable inference.  See Burwell, 213 F. Supp. 2d at 929, citing Chmiel v. JC Penney Life Ins. Co., 158 F.3d 966, 968 (7th Cir. 1998).  Therefore, the nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal."  Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004).

## II.  FMLA CLAIM

NAL contends that it is entitled to summary judgment on Plaintiff's claim brought under the FMLA.  NAL argues that the sole reason Plaintiff was discharged from employment by NAL on March 27, 2006, was the positive test result for an illegal drug as reported to NAL.  NAL stated that this action was taken in accordance with NAL's drug and alcohol policy and was consistent with all previous incidents of positive drug test results for employees of NAL.  NAL argues that, even if Plaintiff could make a prima facie case under the FMLA, he cannot prevail because NAL has shown a legitimate reason wholly unrelated to FMLA leave for terminating Plaintiff's employment and Plaintiff has no evidence of pretext to rebut the legitimacy of the reason.

In his Response, Plaintiff contends that NAL is not entitled to summary judgment because he was fired because he was sick and was frequently using intermittent leave under the FMLA. Plaintiff argues that he has presented sufficient evidence to survive summary judgment on his FMLA interference claim and on his FMLA retaliation claim.

The FMLA entitles eligible employees "to a total of 12 workweeks of leave" for, among other things, "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D); Vail v. Raybestos Prods. Co., 533 F.3d 904, 909 (7th Cir. 2008), cert. denied, 2009 WL 425413 (U.S. 2009).  The FMLA provides that

"[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).  Therefore, the FMLA makes it unlawful for an employer to interfere with an employee's attempt to exercise any FMLA rights.  Burnett v. LFW, Inc., 472 F.3d 471, 477 (7th Cir. 2006).  To prevail on an FMLA interference claim, a plaintiff must establish that: (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled.  Burnett, 472 F.3d at 477.

Plaintiff argues that he has established the first four elements because he has shown that he was eligible for and entitled to intermittent leave under the FMLA.  Plaintiff also argues that, as to the fifth element, "there can be no dispute that NAL denied [him] any further use of this intermittent leave when it fired him."  Plaintiff also argues that he can also prevail on his FMLA interference theory by showing that NAL managers discouraged him from using his FMLA leave.  Plaintiff stated that he has provided evidence of this by way of a November 23, 2005, transfer request and "his testimony that his supervisors began to treat him with hostility."  In fact, however, Plaintiff testified at his deposition that he was not denied FMLA leave any time he asked.  He also could not name any supervisor who harassed or retaliated against him after he was granted intermittent leave under the FMLA.[2]  Moreover, Plaintiff's transfer request, by itself, is not evidence that Plaintiff had any problems because of his use of FMLA leave.  At his deposition, in response to a question asked by

---

[2]  This court notes that Plaintiff, in his response to the Motion for Summary Judgment, has tried to ignore clear, unequivocal testimony given by Plaintiff at his deposition.  NAL, and this court, can obviously rely on and accept as true Plaintiff's own testimony.  This court will therefore disregard arguments that are contrary to sworn testimony given by Plaintiff at his deposition.

his counsel regarding his transfer request, Plaintiff agreed that he was trying to get away from the shipping department.  However, an employee can request a transfer for many reasons and Plaintiff has not provided any evidence, by way of deposition testimony or an affidavit, that his transfer request had anything to do with his use of FMLA leave.

As far as Plaintiff's claim that NAL interfered with his use of FMLA leave by terminating him, this court agrees with NAL that this claim fails because Plaintiff was terminated after NAL was informed by PCH that Plaintiff had a positive drug test.  An employer is not liable for interference with FMLA rights if the employee would have been fired even absent to employee's right to FMLA leave.  See Kohls v. Beverly Enter. Wisc., Inc., 259 F.3d 799, 804-05 (7th Cir. 2001).  NAL has shown that its consistent response, demonstrated without exception, to positive drug tests has been termination of employment.

Plaintiff has challenged this fact by arguing that NAL did not follow its own policy regarding drug tests.  Plaintiff argues that, contrary to NAL's written policy, he was not given the opportunity to explain his positive test.  This court agrees with NAL that Plaintiff was given the opportunity to explain his positive test to Dr. Gilbert.[3]  Because Dr. Gilbert confirmed the prescription medications Plaintiff was taking, he did not report that Plaintiff tested positive for opiates.  However, because Plaintiff could not explain the positive test for THC, that positive result was reported to NAL.  Plaintiff has also challenged the procedures used by PCH for collecting the urine specimen.  However, this court agrees with NAL that Plaintiff has not shown any reason why NAL could not rely on the positive drug test.  In fact, Plaintiff testified at his deposition that he was not making any

---

[3] This court agrees with NAL that it would make little sense to have untrained and unqualified management personnel assess the legitimacy and accuracy of possible medical, physiological, and pharmacological reasons an employee may offer to explain a positive drug test result.

claim that NAL knew the test result was wrong or that NAL was not entitled to rely on the report of the positive drug test. Plaintiff has also complained that NAL did not give him a copy of the report "or even tell him what type of drug it claimed he had taken." However, Plaintiff testified that he requested, and obtained, a copy of the positive drug test from PCH. He also testified that, although he was told only that he was "terminated for violation of policy," he assumed he was fired because of the drug test.

Plaintiff has also argued that one employee, Andrea Entrican, was not immediately fired after she had a positive drug test. The record is not entirely clear on this point, but there is no dispute that Entrican's employment was terminated either immediately or shortly after NAL received a report of a positive drug test. This court concludes that it makes little difference whether Entrican's employment was terminated immediately or within a few weeks . The undisputed fact remains that every employee of NAL who had a positive drug test was fired.

Plaintiff has also argued that NAL's decision to terminate Plaintiff is suspect because Pitchford testified at trial in two previous cases involving FMLA claims, one a claim against NAL and one a claim against Pitchford's previous employer. In both cases, the jury found in favor of the employee and determined that the employer violated the FMLA. Plaintiff argues that the juries in those two trials did not believe Pitchford's testimony. Plaintiff argues that Pitchford has a history of firing employees who used the FMLA and lying to cover up his motive. This court agrees with NAL that this case is distinguishable from the two prior cases involving Pitchford because Pitchford's decision to terminate Plaintiff was based on objective evidence in the form of a report from a third party which established a violation of policy for which employees, without exception, were discharged. Moreover, as previously noted, Plaintiff testified that he was not claiming that

NAL was not entitled to rely on the positive drug test.

Plaintiff also argues that summary judgment should not be entered in favor of NAL because he has direct evidence to support his claim of retaliation. The FMLA forbids an employer from retaliating against an employee who exercises FMLA rights. Burnett, 472 F.3d at 477. Under the direct method of proof, Plaintiff must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. Caskey v. Colgate-Palmolive Co., 535 F.3d 585, 593 (7th Cir. 2008), cert. denied, 129 S. Ct. 738 (2008). A plaintiff can prevail under the direct method by showing an admission of discrimination or by "constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." Ridings v. Riverside Med. Ctr., 537 F.3d 755, 771 (7th Cir. 2008), quoting Phelan v. Cook County, 463 F.3d 773, 779 (7th Cir. 2006). For Plaintiff to defeat summary judgment in this manner, "[a]ll that is required is evidence from which a rational trier of fact could reasonably infer that the defendant had fired the plaintiff because the latter was a member of a protected class." Phelan, 463 F.3d at 780, quoting Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994).

Plaintiff contends that he has sufficient evidence to meet the applicable standard. Plaintiff first argues that he has evidence that NAL's decisionmaker, Pitchford, has a litigated history of firing employees who used the FMLA and lying to cover up his motive. Plaintiff again relies on the previously mentioned cases involving Pitchford, which are McMahan v. North American Lighting, Inc., Case No. 06-CV-2039, and Carruth v. Continental Gen. Tire, Inc., 2001 WL 1775992 (S.D. Ill. 2001). Plaintiff contends that the United States Supreme Court and the Seventh Circuit have allowed this kind of "me too" evidence to support an inference of discrimination. Plaintiff is correct

that "behavior toward or comments directed at other employees in the protected group" is one type

of circumstantial evidence that can support an inference of discrimination.  See Hasan v. Foley &

Lardner LLP, 552 F.3d 520, 529 (7th Cir. 2008), quoting Hemsworth v. Quotesmith.com, Inc., 476

F.3d 487, 491 (7th Cir. 2007).  This kind of "me too" evidence can be relevant to a discrimination

claim.  See Sprint/United Mgmt. Co. v. Mendelsohn, ___ U.S. ___, 128 S. Ct. 1140, 1147 (2008).

 The Supreme Court stated that the question of whether this kind of evidence is relevant depends on

a variety of factors, "including how closely related the evidence is to the plaintiff's circumstances

and theory of the case."  Sprint/United, 128 S. Ct. at 1147; see also Hasan, 552 F.3d at 529.

        In this case, Plaintiff was terminated following a positive drug test.  According to Plaintiff,

both McMahan and Carruth were fired for excessive absenteeism, and the jury in both cases

determined that the termination violated the FMLA.  Neither the McMahan case nor the Carruth case

involved a positive drug test.  Therefore, this court concludes that the situation in those cases has

little, if any, relevance to Plaintiff's claim in this case.  Moreover, NAL is correct that Plaintiff is

reading too much into the jury verdicts in favor of the plaintiffs in McMahan and Carruth when he

argues that the verdicts show that Pitchford lied at both trials.  No such jury finding was made.

        Plaintiff next argues that his evidence of hostility, ambiguous statements and suspicious

coincidences show that NAL's real motivation for firing Plaintiff was its desire to stop him from

using his intermittent leave under the FMLA.  In support of this argument, Plaintiff points to an

affidavit he signed during the pendency of the McMahan case.  In that affidavit, Plaintiff stated that

his supervisor, Doug Starkey, had commented to him and some of his co-workers about Starkey's

displeasure with McMahan for missing work and that Starkey intended to fire McMahan when his

FMLA leave ran out.  Plaintiff also pointed to his deposition testimony that Starkey falsely reported

another employee's work accident as being caused by Plaintiff and then required Plaintiff to take a drug test. This court concludes that this evidence falls short. First of all, Plaintiff has not provided any evidence that Starkey expressed displeasure with him for missing work. Secondly, Plaintiff testified at his deposition that the incident involving Starkey's false accusation occurred in August of 2005, before Plaintiff had applied for or was approved for intermittent FMLA leave. Most importantly, Plaintiff was terminated after a positive drug test and there is no evidence that the decision to terminate Plaintiff was affected by any input from Starkey. Plaintiff has no evidence that Starkey or Pitchford had anything to do with his selection for the drug test on March 20, 2006. This court agrees with NAL that Plaintiff's testimony that Starkey moved him to the front of the line of employees chosen for the drug test does not change this fact. Where Plaintiff was in line for testing on March 20, 2006, has no bearing on whether he was randomly selected for the test or on the test results. Plaintiff testified that he was not claiming that he was not randomly selected for the drug test and was not claiming that NAL was not entitled to rely on the report of the positive drug test.

For all of the reasons stated, this court concludes that Plaintiff does not have sufficient evidence to show that he was retaliated against for exercising his rights under the FMLA under the direct method of proof.

A claim of FMLA retaliation may also be analyzed under the McDonnell Douglas burden-shifting framework. Phillips v. Mathews, 547 F.3d 905, 912 (7th Cir. 2008). Under this method, a plaintiff must establish a prima facie case by showing that he engaged in statutorily protected activity, met his employer's legitimate expectations, suffered an adverse employment action, and was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Caskey, 535 F.3d at 593. Once the prima facie case is established, the burden

shifts to the employer to produce a non-discriminatory reason for this action. Caskey, 535 F.3d at

585. If the employer meets this burden, the burden shifts back to the employee to demonstrate that

the proffered reason is pretextual. Caskey, 535 F.3d at 593.

This court agrees with NAL that, even if Plaintiff could establish a prima facie case, NAL

has clearly produced a non-discriminatory reason for its action, Plaintiff's positive drug test.[4] This

court also agrees with NAL that Plaintiff cannot demonstrate that this proffered reason is pretextual.

Plaintiff has recognized that, in order to show pretext, he must show that NAL's reason for firing

him was a "lie, specifically a phony reason for some action." Sublett v. John Wiley & Sons, Inc.,

463 F.3d 731, 737 (7th Cir. 2006), quoting Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir.

1995). Plaintiff argued that he can demonstrate that the reason given by NAL is pretextual because

of Pitchford's history of lying in identical circumstances and because NAL did not follow its written

drug and alcohol policy. This court has already considered and rejected these arguments. Plaintiff

has not shown that NAL did not believe and rely on the positive drug test. See Burks v. Wisc. Dept.

of Transp., 464 F.3d 744, 754-55 (7th Cir. 2006) (an "employee's attempt to avoid summary

judgment cannot succeed unless the employee puts forth evidence suggesting that the employer itself

did not believe the proffered reasons for termination"). This court therefore concludes that Plaintiff

has not shown that NAL's proffered reason for terminating Plaintiff's employment was a pretext for

retaliation based upon Plaintiff's use of intermittent FMLA leave.

This court concludes that NAL is entitled to summary judgment on Plaintiff's FMLA claims.

### III.  ADA CLAIM

---

[4]  This court notes that Plaintiff cannot show the fourth element of his prima facie case, that he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. The evidence shows that every employee who tested positive for drugs was terminated.

In his Response to NAL's Motion for Summary Judgment, Plaintiff argues that his ADA claims mirror his FMLA claims. Plaintiff stated that his ADA claim "would simply be that NAL discriminated against him in violation of the ADA when it fired him in order to end its obligation to continue to reasonably accommodate his breathing disability by providing him with unpaid, intermittent medical leave." Plaintiff stated that he would prove his disability discrimination theory using the same evidence and same method as his FMLA claims.

This court notes that NAL has made a persuasive argument that Plaintiff has not provided adequate evidence that he suffers from a disability as defined by the ADA. However, this court does not need to decide this issue. This court again concludes that the evidence in this case shows that Plaintiff was terminated because of a positive drug test. Therefore, for the same reasons that this court has already concluded that NAL is entitled to summary judgment as to Plaintiff's FMLA claims, NAL is entitled to summary judgment as to Plaintiff's claims under the ADA as well.

## IV.  NEGLIGENCE CLAIM

In his Complaint (#1), Plaintiff claims that PCH negligently and/or recklessly performed a drug test on a sample provided by Plaintiff which resulted in a false positive and/or false conclusion that Plaintiff had unlawfully used drugs. PCH filed a Motion for Summary Judgment (#24) and argued that it was entitled to summary judgment because Plaintiff cannot show that PCH breached its duty to Plaintiff or that Plaintiff's injury was proximately caused by that breach. PCH stated that, pursuant to its verbal agreement with NAL to perform random drug screens of NAL's employees, NAL requested non-Department of Transportation (DOT) drug screens be performed. PCH stated that, in performing non-DOT drug screens, it "utilizes DOT guidelines in securing the collection site and providing for the integrity of the specimen." PCH argued that it complied with its standard of

14

care in performing and analyzing the specimen provided, in communicating with Plaintiff regarding

the results of the test and confirming whether there was any legitimate medical explanation for the

positive results, in preparing its report regarding Plaintiff's positive drug test, and in reporting

Plaintiff's positive drug test for THC to NAL.   PCH relied on the testimony of Livvix and Dr.

Gilbert that they followed the applicable standard of care.   PCH argued that, without expert

testimony, Plaintiff cannot establish that PCH breached its standard of care.

In his Response (#28), Plaintiff argued that PCH contends that it followed DOT regulations

for drug testing but the evidence shows PCH actually failed to follow the regulations or performed

them incorrectly.  For example, Plaintiff argued that, contrary to the applicable DOT regulations,

the evidence will show that PCH did not shut off the water supply to the bathroom where the urine

specimens were collected, did not tape off the toilet sink or tank and did not put a bluing agent in

the toilet tank.  Plaintiff also stated that the regulations state that the collector must "[i]nstruct the

employee to wash and dry his or her hands" before the employee provides the urine specimen and

"not to wash his or her hands again until after delivering the specimen."  See 49 C.F.R. § 40.63(b).

Plaintiff pointed out that Livvix testified that she had employees wash their hands "after" providing

the sample, not before.  Plaintiff argued that the failure to follow standardized DOT procedures

affects the integrity of the drug test and renders the drug test results unreliable.  Plaintiff argued that,

to the extent that PCH has argued that it is not required to follow DOT regulations for non-DOT

drug tests, it has not described the standard of care it claims to have followed and has not shown that

it acted with reasonable care in collecting, handling and testing Plaintiff's urine specimen.  Plaintiff

argued that he did not use marijuana or cannabis so that the positive report was a "false positive."

Plaintiff argued that, based upon the evidence in this case, PCH is not entitled to summary judgment,

relying on Stinson v. Physicians Immediate Care, Ltd., 646 N.E.2d 930 (Ill. App. Ct. 1995) and

Kindernay v. Hillsboro Area Hosp., 851 N.E.2d 866 (Ill. App. Ct. 2006).

In Stinson, the Illinois appellate court held that a drug-testing laboratory owes a duty of

reasonable care to persons whose specimens its tests for employers or prospective employers.

Stinson, 646 N.E.2d at 935.  The court stated that the "the injury, that the plaintiff would be

terminated from his employment, is not only foreseeable, but also is a virtual certainty in the event

of a positive drug test result."  Stinson, 646 N.E.2d at 933.  The court also stated that the "drug-

testing laboratory is in the best position to guard against the injury, as it is solely responsible for the

performance of the testing and quality control procedures."   Stinson, 646 N.E.2d at 934.   In

Kindernay, a bus driver who lost her job after a positive drug test sued the hospital that administered

the test.  The jury found in her favor on her cause of action for negligence and the jury verdict was

affirmed on appeal.  The Illinois appellate court stated that "a reasonable jury could find that it was

more likely than not that the test result was a false positive, in that the plaintiff had not used

cannabis."  Kindernay, 851 N.E.2d at 876.  The court rejected the hospital's argument that the

plaintiff could not establish the standard of care without expert testimony.  The court stated that the

"DOT regulations plainly establish the procedures to be followed by the defendant in administering

the plaintiff's drug test" so that "[n]o further evidence of the appropriate standard of care was

necessary." Kindernay, 851 N.E.2d at 877.  The court in Kindernay noted that testimony in that case

showed that the hand washing procedure set out by the DOT regulations "is in place to prevent

contamination on the subject's hands from causing a false-positive test result."  Kindernay, 851

N.E.2d at 871.

In its Reply (#29), PCH argued that it was not required to follow the DOT regulations in

16

performing non-DOT drug screens.  PCH also argued that none of the breaches of DOT procedure set forth by Plaintiff resulted in his positive drug screen.

This court concludes that this case raises some interesting and rather novel issues, such as whether DOT regulations furnish the standard of care when non-DOT drug screens are performed. However, Plaintiff's claim against PCH is brought under Illinois law.  Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a state law claim where: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially dominates the claim or claims over which the district court has original jurisdiction; (3) the district court dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances where there are other compelling reasons for declining jurisdiction.  McCready v. eBay, Inc., 2005 WL 6082528, at *9 (C.D. Ill. 2005); see also Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C., 277 F.3d 882, 896 (7th Cir. 2001).  In this case, this court has granted summary judgment in favor of NAL on both of Plaintiff's federal claims, so the claims over which this court had original jurisdiction are no longer before the court.  In addition, this court concludes that Plaintiff's claim of  negligence based on the failure to properly conduct an employment drug test in a non-DOT situation raises rather novel issues of state law which are better left to the Illinois courts.   See Bilow, 277 F.3d at 896; Hughes v. City of Chicago, 2004 WL 432571, at *2-3 (N.D. Ill. 2004).   For both of these reasons, this court declines to exercise supplemental jurisdiction over Plaintiff's state law claim against PCH.

Plaintiff's state law claim against PCH is dismissed without prejudice pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for want of subject matter jurisdiction.  See McCready, 2005 WL 6082528, at *9.  Therefore, this court does not have jurisdiction over the claim

and cannot rule on PCH's Motion for Summary Judgment (#24).  Plaintiff may refile his claim against PCH in state court.

IT IS THEREFORE ORDERED THAT:

(1) Defendant NAL's Motion for Summary Judgment (#23) is GRANTED.  Judgment is entered  in favor of NAL and against Plaintiff.

(2) This court declines to exercise supplemental jurisdiction over Plaintiff's state law claim against PCH.  Plaintiff's state law claim against PCH is therefore dismissed without prejudice for want of subject matter jurisdiction.  This court does not have jurisdiction over the claim and cannot rule on PCH's Motion for Summary Judgment (#24).  Plaintiff may refile his claim against PCH in state court.

(3) This case is terminated.  The final pretrial conference scheduled for May 8, 2009, and the jury trial scheduled for May 18, 2009, are hereby VACATED.

ENTERED this 19th day of March, 2009

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE