UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| DOUGLAS L. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 07-CV-2195 |
| ) | |
| PARIS COMMUNITY HOSPITAL ) | |
| FAMILY MEDICAL CENTER, ) | |
| ) | |
| Defendants. ) | |

## OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#24) and the Motion for Leave to Supplement the Motion for Summary Judgment (#38) filed by Defendant, Paris Community Hospital/Family Medical Center (PCH). This court has carefully reviewed the parties' arguments and the documents presented by the parties. Following this careful and thorough review, PCH's Motion for Summary Judgment (#24) and Motion for Leave to Supplement (#38) are DENIED.

### FACTS[1]

Plaintiff, Douglas L. Miller, was hired by North American Lighting Inc. (NAL) on March 3, 2003, as an operator in assembly. From the outset of his employment with NAL, Plaintiff was aware of NAL's drug testing policy, including the fact that he would be tested for illegal drugs such as marijuana, and a positive test would result in discharge.

On November 22, 2004, Plaintiff was selected for a random drug test. Plaintiff testified at his deposition that he knew that one of the drugs being tested for was marijuana. He also testified

---

[1] The facts are taken from the parties' Statements of Undisputed Material Facts and the exhibits provided by the parties.

that he had no complaints about the way the drug test was administered or the fact that he was selected for the test. The results of this drug test were negative. Plaintiff testified that he was next selected for a random drug test in August 2005, but there is no record of the results of any drug test in August 2005.

On March 20, 2006, Plaintiff was selected for a drug test and submitted a urine sample. Plaintiff testified that, when he was in line for the drug test, his supervisor, Doug Starkey, came and moved him to the front of the line because Starkey needed him back at work right away. Plaintiff testified that he could not explain how that interfered with the drug testing process. Plaintiff testified that he provided a list of all of the medications he was taking at that time including Avenza, which was morphine, and Norco. Plaintiff testified that he expected to test positive for opiates because of the pain medication he was taking.

Susan Livvix of PCH collected the urine specimens for drug testing on March 20, 2006. PCH had a verbal agreement with NAL to conduct drug testing of employees for NAL. NAL requested that non-DOT drug screens be performed.[2] Livvix testified at her deposition, however, that, in performing non-DOT drug screens, PCH utilizes DOT guidelines in securing the collection site and providing for the integrity of the specimen. Livvix testified that, in terms of securing the facility where the sample was given, there was blue dye in the toilet. Livvix testified that there was no way to shut off the water supply to the sink and the toilet but that the "sample never gets out of sight of the donor or the collector at the same time." Livvix also testified that she had employees

---

[2] This court notes that the Department of Transportation (DOT) has detailed, lengthy regulations setting out "how to conduct these tests and what procedures to use." See 49 C.F.R. § 40.1 et seq. The DOT regulations apply to "all parties who conduct drug and alcohol tests required by Department of Transportation (DOT) agency regulations." 49 C.F.R. § 40.1(a). There is no real dispute in this case that NAL's drug tests were not required by DOT agency regulations so the drug tests were non-DOT tests.

wash their hands "after" providing the sample and did not provide employees with a writing which set forth the steps of the drug collection process.

Plaintiff testified that the procedure on March 20, 2006 was not any different from the procedure for the drug test on November 22, 2004. Plaintiff testified that he would not say that the collection procedure that he underwent on March 20, 2006, was flawed. He stated, however, that he did not see the woman overseeing the drug test seal the urine specimen. He acknowledged that he signed a certification that day which stated, "I certify that I provided my urine specimen to the collector; that I have not adulterated it in any manner; each specimen bottle used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen bottle is correct." Plaintiff testified that he did not read the certification before he signed it. Plaintiff submitted an affidavit, dated January 22, 2009, which stated that, on March 20, 2006, the drug tester did not tell him to wash his hands before providing the urine sample and he did not wash his hands. Plaintiff stated that the water to the sink and toilet had not been shut off, there was no blue dye in the toilet, and the toilet lid and the sink had not been taped in any way.

The urine sample provided by Plaintiff was tested at PCH and showed a positive result for THC and for opiates. PCH forwarded to specimen to LabCorp for GC/MS analysis. LabCorp confirmed the presence of opiates and THC in Plaintiff's urine specimen. However, Dr. William Lynn, the LabCorp Director, testified that LabCorp's expectation is that urine specimens forwarded to LabCorp for analysis are "collected in accordance with DOT standards."

Plaintiff testified that Mr. Gilbert from PCH, who identified himself as the medical director, called him regarding the results of the drug test. Plaintiff testified that Gilbert asked him about his

medications and Plaintiff told him the dosage he was taking, the name of the doctor who prescribed the medications, the pharmacy where he got the prescriptions filled and their phone numbers. Plaintiff testified that Gilbert asked him why he might test positive for THC and Plaintiff told Gilbert he "had no idea." Plaintiff testified that he knew that THC was associated with the usage of marijuana. Plaintiff testified at his deposition that he last used marijuana about 26 years ago, when he was 18 or 19 years old.

Dr. Daniel Gilbert testified that he was the medical review officer for PCH. Dr. Gilbert testified that PCH followed "the DOT guidelines when it comes to collection" of urine samples given as part of a drug screen. He testified that he contacted Plaintiff regarding the results of Plaintiff's drug test. Dr. Gilbert then contacted Plaintiff's pharmacy and verified that Plaintiff had a current prescription for each medication. Dr. Gilbert, on behalf of PCH, communicated Plaintiff's positive test result for THC to NAL. Dr. Gilbert did not report a positive test result for opiates because he had confirmed Plaintiff's prescriptions for pain medication.

On March 27, 2006, NAL terminated Plaintiff's employment after it received the report of the positive test for THC. Mark Pitchford, NAL's human resources manager, testified that any time the hospital certifies the presence of illegal drugs in an employee's system, the employee's employment is terminated. NAL submitted documentation showing that every employee who tested positive for drugs was terminated. Plaintiff testified that the positive test for THC was wrong because he had not used marijuana. He testified, however, that he was not making any claim that NAL knew the test result was wrong or that NAL was not entitled to rely on the report of the positive drug test. Plaintiff testified that he requested a copy of the positive drug screen results from PCH and a copy was provided to him.

4

PROCEDURAL HISTORY

Om October 25, 2007, Plaintiff filed his Complaint (#1) against NAL and PCH. Plaintiff alleged that NAL violated the Family Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA). Plaintiff also alleged that PCH negligently performed the drug test and sought damages pursuant to Illinois law. Both NAL and PCH filed a Motion for Summary Judgment.

On March 19, 2009, this court entered an Opinion (#31). This court agreed with NAL that the evidence showed that the sole reason Plaintiff was discharged from employment by NAL was the positive test result for an illegal drug as reported to NAL. This court therefore concluded that NAL was entitled to summary judgment on Plaintiff's claims that NAL violated the FMLA and the ADA.

This court then noted that Plaintiff's claim against PCH was brought under Illinois law. This court stated that, because it had granted summary judgment in favor of NAL on both of Plaintiff's federal claims, the claims over which this court had original jurisdiction were no longer before the court. This court also concluded that Plaintiff's claim of negligence against PCH raised rather novel issues of state law which were better left to the Illinois courts. This court therefore declined to exercise supplemental jurisdiction over Plaintiff's state law claim against PCH. Accordingly, this court dismissed Plaintiff's state law claim against PCH without prejudice pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for want of subject matter jurisdiction and did not rule on PCH's Motion for Summary Judgment (#24). This court stated that Plaintiff could refile his claim against PCH in state court.

On March 25, 2009, Plaintiff filed a Motion to Alter Judgment (#34). Plaintiff stated that he is a citizen of Indiana and PCH is located in Paris, Illinois, and is a citizen of Illinois. Plaintiff

further stated that more than $75,000 is in controversy in his tort claim against PCH. Plaintiff therefore argued that this court has diversity jurisdiction over his claim against PCH under 28 U.S.C. § 1332(a)(1). Plaintiff asked this court to amend its order which dismissed Plaintiff's claim against PCH without prejudice and retain jurisdiction over the claim. On April 10, 2009, PCH filed its Response to Plaintiff's Motion to Amend Judgment (#36). PCH stated that it had no basis to dispute jurisdiction based upon diversity of citizenship and, therefore, had no objection to Plaintiff's request that this court retain jurisdiction of this matter. PCH requested that this court rule on PCH's Motion for Summary Judgment (#24).

On April 16, 2009, this court entered an Order (#37). This court concluded that Plaintiff had adequately shown that this court has jurisdiction over Plaintiff's claim against PCH based upon diversity of citizenship. See 28 U.S.C. § 1332(a)(1). This court therefore granted Plaintiff's Motion to Amend Judgment (#34) and vacated the judgment dismissing Plaintiff's claim against PCH without prejudice. This court directed the clerk to reopen this case for purposes of reinstating Plaintiff's claim against PCH and further directed the clerk to reinstate PCH's Motion for Summary Judgment (#24) as a pending motion. This court stated that it would issue a ruling on the motion in due course.

On May 12, 2009, PCH filed a Motion for Leave to Supplement its Motion for Summary Judgment (#38). PCH stated that, on or about May 3, 2009, it located its Non-DOT Policy for on-site collection, which was in effect at the time of Plaintiff's March 20, 2006, drug screen. PCH argued that the existence of a Non-DOT policy for on-site collection is relevant to the allegations of negligence raised by Plaintiff and requested that this court grant it leave to supplement its Motion for Summary Judgment. PCH attached a proposed Supplement to Motion for Summary Judgment,

with attached exhibits.

On May 23, 2009, Plaintiff filed his Response and Objection to PCH's Motion for Leave to Supplement its Motion for Summary Judgment (#40). Plaintiff argued that, long after discovery had closed and PCH's Motion for Summary Judgment was fully briefed, PCH completely contradicted the position it took in the Motion for Summary Judgment. Plaintiff asked this court to deny PCH's Motion for Leave to Supplement.

ANALYSIS

I. MOTION FOR SUMMARY JUDGMENT

A. PLAINTIFF'S CLAIM

In his Complaint (#1), Plaintiff claims that PCH negligently and/or recklessly performed a drug test on a sample provided by Plaintiff which resulted in a false positive and/or false conclusion that Plaintiff had unlawfully used drugs. Illinois has recognized such a cause of action in Stinson v. Physicians Immediate Care, Ltd., 646 N.E.2d 930 (Ill. App. Ct. 1995) and Kindernay v. Hillsboro Area Hosp., 851 N.E.2d 866 (Ill. App. Ct. 2006).

In Stinson, the Illinois appellate court held that a drug-testing laboratory owes a duty of reasonable care to persons whose specimens it tests for employers or prospective employers. Stinson, 646 N.E.2d at 934. The court stated that the "the injury, that the plaintiff would be terminated from his employment, is not only foreseeable, but also is a virtual certainty in the event of a positive drug test result." Stinson, 646 N.E.2d at 933. The court also stated that the "drug-testing laboratory is in the best position to guard against the injury, as it is solely responsible for the performance of the testing and quality control procedures." Stinson, 646 N.E.2d at 934. In Kindernay, a bus driver who lost her job after a positive drug test sued the hospital that administered

the test. The jury found in her favor on her cause of action for negligence and the jury verdict was affirmed on appeal. The Illinois appellate court stated that "a reasonable jury could find that it was more likely than not that the test result was a false positive, in that the plaintiff had not used cannabis." Kindernay, 851 N.E.2d at 876. The court rejected the hospital's argument that the plaintiff could not establish the standard of care without expert testimony. The court stated that the "DOT regulations plainly establish the procedures to be followed by the defendant in administering the plaintiff's drug test" so that "[n]o further evidence of the appropriate standard of care was necessary." Kindernay, 851 N.E.2d at 877. The court in Kindernay noted that testimony in that case showed that the hand washing procedure set out by the DOT regulations "is in place to prevent contamination on the subject's hands from causing a false-positive test result." Kindernay, 851 N.E.2d at 871.

### B. SUMMARY JUDGMENT ARGUMENTS

In its Motion for Summary Judgment (#24), PCH argued that it is entitled to summary judgment because Plaintiff cannot show that PCH breached its duty to Plaintiff. PCH stated that, pursuant to its verbal agreement with NAL to perform random drug screens of NAL's employees, NAL requested non-DOT drug screens be performed. PCH stated that, in performing non-DOT drug screens, it "utilizes DOT guidelines in securing the collection site and providing for the integrity of the specimen." PCH argued that it complied with its standard of care in performing and analyzing the specimen provided, in communicating with Plaintiff regarding the results of the test and confirming whether there was any legitimate medical explanation for the positive results, in preparing its report regarding Plaintiff's positive drug test, and in reporting Plaintiff's positive drug test for THC to NAL. PCH relied on the affidavits of Livvix and Gilbert in which they stated that

they followed the applicable standard of care. PCH argued that, without expert testimony, Plaintiff cannot establish that PCH breached its standard of care.

In his Response (#28), Plaintiff argued that PCH contends that it followed DOT regulations for drug testing but the evidence shows PCH actually failed to follow the regulations or performed them incorrectly. For example, Plaintiff argued that, contrary to the applicable DOT regulations, the evidence will show that PCH did not explain the basic collection procedure to Plaintiff, did not shut off the water supply to the bathroom where the urine specimens were collected, did not tape off the toilet sink or tank and did not put a bluing agent in the toilet tank. Plaintiff also stated that the regulations state that the collector must "[i]nstruct the employee to wash and dry his or her hands" before the employee provides the urine specimen and "not to wash his or her hands again until after delivering the specimen." See 49 C.F.R. § 40.63(b). Plaintiff pointed out that Livvix testified that she had employees wash their hands "after" providing the sample, not before. Plaintiff also argued that DOT regulations were not followed regarding the inquiry into the medications Plaintiff was taking and regarding the failure to inform Plaintiff of his right to request a re-test of the specimen. Plaintiff argued that the failure to follow standardized DOT procedures affected the integrity of the drug test and rendered the drug test results unreliable. Plaintiff argued that, to the extent that PCH has argued that it is not required to follow DOT regulations for non-DOT drug tests, it has not described the standard of care it claims to have followed and has not shown that it acted with reasonable care in collecting, handling and testing Plaintiff's urine specimen. Plaintiff argued that he did not use marijuana or cannabis so that the positive report was a "false positive." Plaintiff argued that, based upon the evidence in this case, PCH is not entitled to summary judgment.

In its Reply (#29), PCH argued that it was not required to follow the DOT guidelines in

9

performing non-DOT drug screens. PCH argued that it "only followed DOT guidelines in securing the collection site and providing for the integrity of the specimen." PCH also argued that none of the breaches of DOT procedure set forth by Plaintiff resulted in his positive drug screen.

## C.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## D.  RULING

This court agrees with Plaintiff that PCH has not shown that it is entitled to summary judgment in this case. PCH stated that it "followed DOT guidelines in securing the collection site and providing for the integrity of the specimen." This is consistent with the deposition testimony of both Livvix and Gilbert. This court therefore does not agree with PCH's argument that Plaintiff cannot establish the standard of care in this case without an expert witness. Because PCH has stated that it follows the DOT guidelines, this court concludes that Plaintiff can clearly rely on the DOT regulations to establish the procedures to be followed by PCH in administering his drug test, so that "[n]o further evidence of the appropriate standard of care [is] necessary." See Kindernay, 851

N.E.2d at 877.

This court further concludes that Plaintiff has shown that some of the DOT regulations regarding securing the collection site and maintaining the integrity of the specimen were not followed in this case and has also shown that there is a factual dispute regarding whether the requirement to put blue dye into the toilet tank was followed.  PCH has argued that none of the breaches of DOT procedure set forth by Plaintiff resulted in his positive drug screen.  Based upon the record before it, this court cannot make that determination.  This court notes that the court in Kindernay specifically stated that the hand washing procedure set out by the DOT regulations "is in place to prevent contamination on the subject's hands from causing a false-positive test result." Kindernay, 851 N.E.2d at 871.  This court recognizes that PCH is correct that there are factual differences between this case and Kindernay.  However, this court concludes that the evidence of PCH's failure to comply with DOT regulations regarding the collection procedure to be followed, coupled with Plaintiff's testimony that he had not used marijuana, are sufficient to raise a genuine issue of material fact for the jury regarding whether the test result was a false positive caused by PCH's negligence.  See Kindernay, 851 N.E.2d at 876.  Accordingly, PCH's Motion for Summary Judgment (#24) is DENIED.

## II.  MOTION TO SUPPLEMENT

As noted previously, in its Motion for Leave to Supplement its Motion for Summary Judgment (#38), PCH stated that it had just located its Non-DOT Policy for on-site collection, which was in effect at the time of Plaintiff's March 20, 2006, drug screen.  PCH attached Livvix's supplemental affidavit, dated May 11, 2009, to its proposed supplement.  In her supplemental affidavit, Livvix stated that she has been the Manager of Occupational Health at PCH since January

16, 2006. Livvix stated that she was unable to locate written policies related to Non-DOT drug screens prior to her discovery deposition in December 2008 and, therefore, testified that there were no written policies for Non-DOT drug screens. Livvix stated that, on May 1, 2009, she located a Non-DOT written policy for on-site collection. Livvix stated that the March 20, 2006 drug screen collection was conducted in accordance with PCH's written policy for Non-DOT on-site collection. PCH also attached a copy of the written policy. The policy was dated March 8, 2004, and stated that its effective date was "3-04." The policy provides:

> Policy:
>
> Occupational Health Services can provide on-site NON-DOT drug testing.
>
> Procedure:
>
> The procedure for policy NON[-DOT] DRUG TESTING should be followed. If the water at the facility can not be turned off, then the bathroom must be secured by taping the sink with tamper proof tape. If the facility has a stall and you are present in the bathroom to secure the sink, the tape does not need to be used. After applying Blue Dye in the toilet instruct the patient to not flush the toilet. You must stay in the bathroom with the employee behind the stall until the specimen is obtained. After obtaining a temperature, the urine is poured into the vials and secured with the label.

PCH acknowledged that Livvix testified at her deposition that there was no written policy in place for non-DOT drug screens. In fact, Livvix testified that she underwent DOT training for the collection of urine samples and that "[i]n terms of securing [the] collection site, in terms of

providing for the integrity of the specimen, we follow the same process as we do for DOT" for non-DOT testing. She also testified that "whether DOT or non-DOT, [PCH] follows the DOT specimen collection procedures at the specimen collection stage." Livvix specifically testified that, "[i]n terms of the collection, the integrity of the site and maintaining the specimen," there were no "differences between a DOT and a non-DOT collection" in March 2006.

In its proposed supplement, PCH argued that PCH followed its policy in safeguarding the security and integrity of urine collection. PCH contended that, due to the written policy in place, and Plaintiff's failure to obtain an expert, Plaintiff cannot establish that the standard of care requires the use of DOT guidelines for non-DOT drug screens. PCH argued that, as a result, Plaintiff's allegations of negligence are unfounded and PCH is entitled to summary judgment in its favor.

In his Response and Objection to PCH's Motion for Leave to Supplement (#40), Plaintiff argued that PCH has continued to change its evidentiary position regarding the collection procedure it utilized and the proper standard of care. Plaintiff noted that, throughout discovery in this case, PCH could not commit factually to the procedure it followed on March 20, 2006, when it collected a urine sample from Plaintiff as part of a drug test, and could not commit to a position regarding the proper standard of care. Plaintiff further noted that, for purposes of its Motion for Summary Judgment, PCH decided to claim that it followed DOT collection procedures and the DOT collection procedures were the proper standard of care to be followed by a drug testing facility.[3] Plaintiff stated that, to defeat summary judgment, he showed:

> that the [PCH] witnesses had admitted in earlier testimony that they

---

[3] This court notes that this position was the only one which could be consistent with the testimony of PCH's witnesses, Gilbert and Livvix.

>either did not have collection procedures or that they were not sure of the procedures followed and also, through Dr. Lynn, that the drug test results from LabCorp were based upon an expectation that DOT collection procedures were followed and that the drug test results would not be reliable if proper collection procedures were not followed. [Plaintiff] also presented his evidence that the DOT procedures were not followed at all by Ms. Livvix during the collection.

Plaintiff stated that, "[n]ow, long after discovery has closed and this motion has been fully briefed, [PCH] is asking the Court to allow it to supplement its summary judgment filing for the purpose of completely contradicting its position taken in its December 30, 2008, motion. Plaintiff argued that PCH cannot claim the lack of a genuine issue of material fact regarding Livvix's compliance with some new "non-DOT procedure" when she earlier testified that she did not have a set of procedures and that she used DOT procedures. Plaintiff also pointed out that the new evidence has little usefulness when Dr. Lynn, Livvix and Gilbert all testified that DOT standards must be followed in order for the testing of the sample to be reliable. Plaintiff asked that PCH's Motion for Leave to Supplement be denied, noting that PCH "continues to make clear that 1) it cannot tell what procedures it followed on March 20, 2006, and 2) cannot tell what procedures it thinks it should have followed in specimen collection in order to render the drug test results reliable."

      This court agrees with all of Plaintiff's arguments. PCH's proposed "supplement" to its Motion for Summary Judgment is an attempt to totally change its position, long after the discovery deadline and the deadline for filing dispositive motions had already passed. This court additionally

notes that the newly found written policy lacks detail as to the actual procedures which should be followed. Most importantly, Livvix's deposition testimony makes clear that she was completely unaware of the written policy at the time Plaintiff's urine sample was collected on March 20, 2006.

For all of the reasons stated, PCH's Motion for Leave to Supplement its Motion for Summary Judgment (#38) is DENIED.

IT IS THEREFORE ORDERED THAT:

(1) PCH's Motion for Summary Judgment (#24) is DENIED.

(2) PCH's Motion for Leave to Supplement (#38) is DENIED.

(3) This case is scheduled for a telephone status conference on August 6, 2009, at 4:00 p.m. so that a final pretrial conference and jury trial can be scheduled in this case.

ENTERED this 13th day of July, 2009

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE